IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

VICKIE LYNN SILVA,

                Plaintiff,              Case No. 3:10 CV 53

    -vs-

                                      MEMORANDUM   OPINION

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

KATZ, J.

This matter is before the Court on Commissioner Michael J. Astrue's ("Defendant" or "Commissioner") objections to the February 23, 2011 Report and Recommendation ("R&R") filed by United States Magistrate Judge George J. Limbert. (Doc. 21). In accordance with *Hill v. Duriron Co.*, 656 F.2d 1208 (6th Cir. 1981), and 28 U.S.C. § 636(b)(1)(B) & (C), this Court has made a *de novo* determination of the Magistrate Judge's findings to which the Defendant objects. For the following reasons, the Court declines to adopt the R&R (Doc. 21) and affirms the decision of the Administrative Law Judge ("A.L.J.").

**I. Background**

*A. Procedural History*

Vickie Lynn Silva[1] ("Claimant") applied for Supplemental Security Income ("SSI") on April 25, 2007. (Doc. 14-7 at 117). Her application was based on allegations of fibromyalgia in her back, carpal tunnel in her wrists, tendonitis in her elbows, a torn ligament in her left knee, and back pain. *Id*. The A.L.J. determined the disability onset date was April 20, 2007. (Doc. 14-2 at

---

[1] In the Application Summary for Supplemental Security Income, Claimant confirmed her name as "Vickie Lynn Summers." (Doc. 14-7 at 117). Throughout the record, however, Claimant uses her husband's surname "Silva."

12). Claimant requested a hearing, and subsequently appeared via video conference with counsel and the A.L.J. (Doc. 14-2 at 12). The A.L.J. issued an unfavorable decision, determining Claimant was not disabled and thus not entitled to SSI. (Doc. 14-2 at 20). The appeals council declined Claimant's request for review, thus rendering the decision of the A.L.J. the Commissioner's final decision. 20 C.F.R. § 416.1481; (Doc. 14-2 at 9). On January 11, 2010, Claimant filed a request for judicial review. (Doc. 1). This case was referred to the Magistrate Judge, who recommended a remand to the A.L.J. for further administrative proceedings. 42 U.S.C. § 405(g); Local Rule 3.1; (Doc. 21).

*B. Medical History*

In his report, the A.L.J. provided the following detailed summary of Claimant's medical history:

> On April 23, 2007, the claimant presented to treating physician Dr. Greg Grant and complained of left knee pain that began when she stepped down and her ankle rolled causing her knee to give out. [(Doc. 14-14 at 361-62).] Dr. Grant diagnosed her with a meniscus injury and prescribed Ibuprofen, rest and ice and referred her to an orthopedic specialist, Dr. Steven Shine. [(Doc. 14-14 at 363).]
>
> The claimant saw Dr. Shine on April 25, 2007, he noted a limited range of motion of the knee and that the findings on left knee x-rays were unremarkable. [(Doc. 14-10 at 264).] Dr. Shine diagnosed her with possible internal derangement of the left knee and recommended home exercise and physical therapy. [*Id.*] The claimant returned to Dr. Shine on June 6, 2007, with continued knee discomfort and shoulder discomfort which she attributed to caring for her mother. [(Doc. 14-10 at 265).] Dr. Shine noted a limited range of motion of the shoulder and diagnosed her with left shoulder strain and left knee strain. [(Doc. 14-10 at 265-66).] Dr. Shine advised the claimant to try physical therapy. [*Id.*] The claimant saw Dr. Shine again on June 19, 2007, with complaints of bilateral wrist and hand numbness. [(Doc. 14-10 at 267).] Dr. Shine reviewed the results of a nerve conduction study which revealed mild median neuropathy at the wrist indicative of carpal tunnel syndrome. [(Doc. 14-10 at 268-69).] Dr. Shine prescribed wrist splints, vitamin B6 and a Medrol dose pack. [*Id.*] When she returned to Dr. Shine on July 17, 2007, she reported that she only had obtained one splint, had not taken the vitamin B6 and had lost the prescription for the Medrol dose pack. [(Doc. 14-10 at 270).] On

2

August 7, 2007, the claimant presented to Dr. Shine complaining of newly developed left elbow pain. [(Doc. 14-10 at 272).] She reported that she had obtained a second brace and that her wrists were significantly improved. [*Id*.] Dr. Shine diagnosed her with left lateral epicondylitis and prescribed physical therapy and a Medrol dose pack. [(Doc. 14-10 at 273-74).] The claimant informed the physician that she did not have time to attend physical therapy so she was prescribed an elbow brace in lieu of physical therapy. [(Doc. 14-10 at 274).] When she returned to Dr. Shine on September 4, 2007, she reported persistent elbow symptoms. [(Doc. 14-10 at 275).] Despite this, she had not obtained a brace nor had she attended physical therapy because she did not have time. [(Doc. 14-10 at 276).] She agreed to attempt to obtain a brace and try a cortisone shot if her symptoms worsened. [*Id*.]

On September 12, 2007, the claimant presented to Dr. Greg Grant complaining of leg numbness while sitting. [(Doc. 14-13 at 379-80).] Dr. Grant noted that she was neurologically intact and diagnosed her with radiculopathy and disturbance of skin sensation and referred her for x-rays. [(Doc. 14-13 at 380-81).] Lumbar x-rays taken on September 13, 2007, revealed mild degenerative disc disease. [(Doc. 14-13 at 381).]

On November 7, 2007, the claimant was seen by Dr. Iassam Al-Turk at the request of DDS. [(Doc. 14-11 at 304).] Dr. Al-Turk noted that the claimant was complaining of low back pain and that her left knee complaints had resolved. [*Id*.] Following a physical examination and review of lumbar x-rays, Dr. Al-Turk concluded that based upon the objective findings sitting, standing, walking, lifting, carrying, handling objects, hearing, speaking and traveling were not restricted. [(Doc. 14-10 at 307).]

On February [26], 2008, the claimant was seen again by Dr. Shine for complaints of left shoulder pain with overhead activities. [(Doc. 14-10 at 277).] Based on the results of her physical examination, she was diagnosed with possible left shoulder outlet impingement and a possible cuff tear. [(Doc. 14-10 at 278).] The claimant again declined physical therapy citing her busy lifestyle. [*Id*.] Dr. Shine recommended a confirmatory MRI. [(Doc. 14-10 at 279).]

On April 29, 2008, the claimant visited Dr. Grant and complained of right foot pain with no apparent cause. [(Doc. 14-15 at 461).] She was diagnosed with tendonitis and told to return in 3 months. [(Doc. 14-15 at 463).]

On July 21, 2008, after complaints of lower extremity pain and edema, the claimant was seen by Dr. Barry Zadeh. [(Doc. 14-14 at 408-11).] Dr. Zadeh performed a venous ultrasound which was negative for significant venous disease. [(Doc. 14-14 at 409).] Dr. Zadeh concluded that the edema and pain was caused by the

> claimant's truncal obesity and recommended diet, exercise and compression stockings. [*Id.*]
>
> On January 9, 2009, the claimant saw Dr. Grant complaining of neck and back pain. Dr. Grant diagnosed her with arthritis (multiple sites), somatic dysfunction of the cervical, thoracic and lumbar spine, and muscle spasm and prescribed Zanaflex. [(Doc. 14-17 at 540-41).] On February 26, 2009, the claimant returned to Dr. Grant complaining of bilateral ankle swelling with prolonged standing. [(Doc. 14-17 at 521).] She reported that she had lost the compression stocking which she had been given. [*Id*]. Dr. Grant recommended that she wear her compression stockings when she engaged in prolonged standing. [*Id*].
>
> On March 3, 2009, the claimant presented to Dr. Timothy Lynch complaining of bilateral shoulder pain. [(Doc. 14-14 at 412).] X-rays revealed bilateral mild to moderate AC joint arthritis and no fractures or bone pathologies. [(Doc. 14-14 at 413-14).] The physician noted that clinical findings indicated that the claimant had carpal tunnel syndrome and that she had declined his offer of further treatment. [(Doc. 14-14 at 414).] Dr. Lynch recommend physical therapy but the claimant declined because she did not have time so he prescribed a Medrol dose pack. [*Id.*] The claimant next saw Dr. Lynch on April 14, 2009. [(Doc. 14-14 at 416).] She complained of bilateral shoulder pain and newly developed neck and trapezial pain and numbness and tingling of the upper extremities. [*Id.*] Dr. Lynch diagnosed her with bilateral shoulder outlet impingement, bilateral upper extremity neuropathy and neck pain. [(Doc. 14-14 at 418).] Dr. Lynch recommended an EMG and referred her to a neurologist. [*Id.*]

(Doc. 14-2 at 17-18). On August 20, 2007, Claimant underwent a psychological evaluation given by Dr. Thomas M. Evans, Ph.D. (Doc. 14-10 at 282). Claimant averred that in a typical day she does the cooking, gets the children ready for school, takes the kids to school, and cleans the house. (Doc. 14-10 at 287). She later added that her husband helps her with these activities. *Id.* Dr. Evans noted that she sat comfortably for the entire evaluation with sustained concentration and attention. (Doc. 14-10 at 284, 287). He concluded that she did not have a psychiatric disorder. (Doc. 14-10 at 288).

Alleging anxiety, Claimant had a psychiatric review performed by Todd Finnerty, M.D. on August 30, 2007. (Doc. 14-11 at 302). In her Activities of Daily Living form, she opined that she

4

gets her daughter up and ready for school, cleans the house, provides her own personal care, drives a car, shops in stores, and pays her bills. *Id*. Dr. Finnerty concluded that Claimant does not have a severe psychological impairment. *Id*.

## C. The A.L.J.'s decision

After "careful consideration of the entire record," and adhering to the well-known five-step sequential analysis,[2] the A.L.J. made the following findings:

1. The claimant has not engaged in substantial gainful activity since April 25, 2007, the application date (20 CFR 416.971 *et seq.*).
2. The claimant has the following severe impairments: fibromyalgia, carpal tunnel syndrome, tendonitis, torn ligament in her left knee, and back pain. (20 CFR 416.920(c)).
3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.925 and 416.926).
4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 416.967(a) the claimant is able to lift or carry up to 10 pounds and sit at least 6 hours of an 8 hour day and stand or walk 6 hours of an 8 hour day.
5. The claimant is unable to perform any past relevant work (20 CFR 416.965).
6. The claimant was born on December 18, 1969 and was 37 years old, which is defined as a younger individual age 18-44, on the date the application was filed. (20 CFR 416.963).
7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).
8. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 416.968).

---

[2] The test is as follows: i) Whether claimant is doing substantial gainful activity; (ii) If claimant is not doing substantial gainful activity, whether he has a severe medically determinable physical or mental impairment and is thus disabled; (iii) If claimant is not doing substantial gainful activity and has a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry; (iv) If claimant can still do past relevant work, he is not disabled; (v) Whether the claimant can make an adjustment to other work considering his age, education, and work experience (residual functional capacity). If the claimant can make an adjustment to other work, he is not disabled. If the claimant cannot make an adjustment to other work, he is disabled. 20 C.F.R. § 416.920(a); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).
10. The claimant has not been under a disability, as defined in the Social Security Act, since April 25, 2007, the date the application was filed (20 CFR 416.920(g)).

(Doc. 14-2 at 14-20). Based on the above findings, the A.L.J. issued his decision, which was that Claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

## II. Standard of Review

### *A. Jurisdiction*

This Court exercises jurisdiction over the Commissioner's final decision pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 832-833 (6th Cir. 2006).

### *B. Review of the R&R*

This Court conducts a *de novo* review of those portions of the Magistrate Judge's report to which Defendant objects. 28 U.S.C. § 636(b)(1). In making its *de novo* determination, the Court reviews the A.L.J.'s decision to see if it is supported by substantial evidence. 42 U.S.C. § 405(g). This Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). The Court does not re-weigh the evidence, but must affirm the A.L.J.'s findings as long as there is substantial evidence to support those findings, even if this Court would have decided the matter differently, and even if there is substantial evidence supporting the claimant's position. *See Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983) (per curiam);

6

*Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc). "Substantial evidence is more than a scintilla of evidence, but less than a preponderance." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1053 (6th Cir. 1983). The A.L.J.'s decision is not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. *Mullen*, 800 F.2d at 545.

## *C. Disability Standard*

A claimant is entitled to receive SSI only when she establishes a disability within the meaning of the Social Security Act. *See* 42 U.S.C. § 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last of a continuous period of not less than twelve (12) months." 20 C.F.R. § 416.905.

### III. Discussion

In her brief submitted to the Magistrate Judge, Claimant raises two issues. (Doc. 17). First, Claimant alleges that the A.L.J. erred by not eliciting vocational expert testimony in the face of nonexertional limitations. *Id*. at 8.[3] Second, Claimant alleges that the A.L.J. did not conduct a proper pain and credibility analysis pursuant to Social Security Ruling ("SSR") 96-7p. *Id*. at 12. The Magistrate Judge determined that the A.L.J. "did not apply the proper standard in evaluating

---

[3] Claimant has failed to comply with Local Rule 10.1, which requires documents that are presented for filing in this Court to be "numbered consecutively." For purposes of this Memorandum Opinion, the Court will use the ECF Docket Number page count to reference Claimant's brief.

7

Claimant's fibromyalgia when assessing the medical source findings and opinions, Claimant's credibility, or her [Residual Functional Capacity ("RFC")]." (Doc. 21 at 4). The R&R declined to address Claimant's first assertion of error, stating that remand for further proceedings would likely affect that issue. *Id*. at 8.

Defendant objects to the R&R, claiming first that the Magistrate Judge failed to recognize that the A.L.J. had made a harmless error in classifying fibromyalgia as a severe impairment. (Doc. 22 at 3). Notwithstanding that harmless error, Defendant further alleges that the Magistrate Judge should have engaged in a substantial evidence review to determine whether the A.L.J. had made a proper RFC finding rather than relying heavily on *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234 (2007). *Id.* at 4. Finally, Defendant objects to the Magistrate Judge's conclusion that the A.L.J.'s credibility assessment was flawed. *Id*. at 5. Claimant did not file a response.

### *A. Defendant's first objection is not properly before this Court*

Defendant's first argument, that the A.L.J. committed a harmless error by finding that Claimant's fibromyalgia is a severe medical impairment, is not properly before this Court. Defendant did not initially raise this issue before the Magistrate Judge, and therefore effectively waived the issue. *See Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000) (holding failure to raise a claim to the Magistrate Judge before filing supplemental objections constitutes a waiver). Moreover, Defendant has not provided any explanation as to why he did not raise this argument sooner. *United States v. Waters*, 158 F.3d 933, 936 (6th Cir. 1998) (holding that an argument first raised in objections to a Magistrate Judge's report and recommendation constitutes an apparent waiver absent a compelling reason). Regardless, consideration of this objection on the merits is invariant to the Court's conclusion that the A.L.J.'s determination must be affirmed.

8

*B. The A.L.J. Properly treated Claimant's allegation of fibromyalgia*

The task of substantial evidence review is complicated by the "very nature of fibrositis."[4] *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 819 (6th Cir. 1988). Fibromyalgia is unique in that it can be confirmed as a severe impairment without objective testing. *Germany-Johnson*, 313 Fed. Appx. 771, 778 (citing *Rogers*, 486 F.3d at 243). Fibromyalgia can only be tested by: 1) the elimination of other medical conditions known to produce similar symptoms of pain, stiffness, and fatigue; and 2) through the testing for tenderness of a series of focal points. *Rogers*, 486 F.3d at 244 (citing *Preston* 854 F.2d at 820; *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 990 (N.D. Ohio 2003)).

*1. The A.L.J. used the proper standard to determine Claimant's RFC*

Considering Claimant's severe and nonsevere impairments, the A.L.J. in the case *sub judice* determined that Claimant's RFC renders her capable of performing sedentary work. (Doc. 14-2 at 15). Under 20 C.F. R. § 404.1567:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

To make this determination, the A.L.J. considered objective medical evidence, opinion evidence, and the extent to which all symptoms can reasonably be accepted as consistent with the evidence. (Doc. 14-2 at 15). The Magistrate Judge argued that because the A.L.J. listed fibromyalgia as a severe impairment, the A.L.J. should have treated fibromyalgia like the Court did in *Rogers*. (Doc. 21 at 4-5).

---

[4] Fibromyalgia is sometimes referred to as fibrositis. *Rogers*, 486 F.3d at 244 n.1.

9

In *Rogers*, the Court determined that based on the nature of fibromyalgia and the A.L.J.'s flawed credibility assessment, the claimant's fibromyalgia should have been classified as a severe impairment. Unlike *Rogers*, the A.L.J. in this case has already classified Claimant's fibromyalgia as a severe impairment. There is no reason that the A.L.J. could not then determine that Claimant is capable of sedentary work. This is because classifying an impairment at the second step of the sequential analysis is simply a "*de minimus*" hurdle which renders an impairment severe "only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs v. Bowen* 880 F.2d 860, 862. The fact that the A.L.J. determined fibromyalgia was a severe impairment at this step does not preclude the A.L.J. from determining a claimant is capable of performing some level of work. *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002) ("the RFC is meant to describe the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from").

*2. The A.L.J.'s credibility determination is supported by substantial evidence*

As part of his credibility determination, the A.L.J. considered the objective medical evidence to see if it was consistent with Claimant's allegations of pain. He determined that Claimant had never been restricted from any activity that would preclude her from sedentary work, a finding that is inconsistent with her testimony. (Doc. 14-2 at 17). The A.L.J. supported his finding with a careful and detailed summary of the medical record. (Doc. 14-2 at 16-17). The Magistrate Judge concluded that the A.L.J. erred by considering the objective medical evidence as part of his treatment of fibromyalgia. (Doc. 21 at 7). Using *Rogers* to bolster his position, the Magistrate Judge also determined that the A.L.J. cannot rely on Claimant's "minimal" daily living

10

activities. *Id*. However, the Court finds that the A.L.J.'s credibility determination is supported by substantial evidence, and, further, that proper treatment was given to Claimant's fibromyalgia.

Due to the elusive, mysterious nature of fibromyalgia, the credibility of the claimant plays an heightened role in the A.L.J.'s RFC decision. *See Swain*, 297 F. Supp. 2d at 990. To evaluate the credibility of a claimant's subjective reports of pain, a two-part analysis is used. 20 C.F.R. § 416.929(a); *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). The Sixth Circuit has characterized this analysis as follows:

> First, the A.L.J. will ask whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. § 416.929(a). Second, if the A.L.J. finds that such an impairment exists, he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities. *Id.*

*Rogers*, 486 F.3d at 248.

When considering fibromyalgia, an A.L.J. may not base his RFC determination on a claimant's "normal" physical findings, such as a normal range of movement, but must instead consider the claimant's credibility as determined by the consistency of the following factors:

> [S]tatements from the claimant and the claimant's treating and examining physicians; diagnosis; efforts to work; the claimant's daily activities; the location, duration, frequency and intensity of the symptoms' precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; treatment, other than medication, the claimant receives to relieve pain; measures used by the claimant to relieve symptoms; and any other factors concerning functional limitations due to symptoms.

*Ruble v. Astrue*, 2010 U.S. Dist. LEXIS 131501, 21-27 (N.D. Ohio 2010) (citing 20 C.F.R. § 416.929; *Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994)); *Rogers*, 486 F.3d at 245; *Preston*, 854 F.2d at 819.

On review "great deference" is given to the A.L.J.'s credibility determination, largely because the A.L.J. had the opportunity to observe the claimant and her demeanor. *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 476 (6th Cir. 2003); *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 230 (6th Cir. 1990); *Williamson v. Sec'y of Health & Human Servs.*, 796 F.2d 146, 150 (6th Cir. 1986). An adverse credibility determination must be supported by substantial evidence, and must be sufficiently explained for the purpose of appellate review. *Rogers*, 486 F.3d at 248-49.

The Sixth Circuit remanded in *Rogers* where the claimant had not only been diagnosed with "classic fibromyalgia" by several physicians, but had also received treatment for her fibromyalgia symptoms in the form of steroid injections and prescription medications. 486 F.3d at 244-45. The claimant also had a deteriorating condition as evidenced by reports of her limited ability to lift, stand, walk, and sit. *Id.* The Court found remand necessary in part because the A.L.J. committed three errors in determining the claimant's credibility: 1) the A.L.J. improperly relied on the lack of "objective" medical evidence and the claimant's "normal" reflexes and testing; 2) the A.L.J. emphasized that the claimant is still active, citing only to minimal daily functions of driving, cleaning, caring for dogs, doing laundry, reading, stretching, and watching the news; and 3) the A.L.J. used the fact that the claimant's physicians encouraged her to remain active as a reason to discredit her credibility. *Rogers*, 486 F.3d at 248-49. Moreover, the Court found that the A.L.J. mischaracterized the claimant's testimony. *Id.* at 249. The *Rogers* court determined that the record actually showed that the claimant did very little driving because she could not sit for more than a few minutes, that she engaged in very light housekeeping, only opened the door to let her dog out in the morning, that she liked to read but could not hold a book,

12

that she could not button her shirt due to finger numbness, and that she received living assistance from her children who lived nearby. *Id*. at 249.

Moreover, despite the fact that the nature of fibromyalgia limits the objective evidence that can be produced, courts have remanded where there is at least some, albeit minimal, evidence of the disease in the record. *See Kalmbach v. Comm'r of Soc. Sec.*, 409 Fed. Appx. 852, 860 (6th Cir. 2011) (the Court remanded where the "[claimant]'s treating rheumatologist since May 2001, has consistently opined that [Claimant] has been unable to perform sustained work activity since April 2005 due to her fibromyalgia and its attendant chronic pain and fatigue."); *Preston v. Sec'y of Health and Human Servs.*, 854 F.2d 815 (6th Cir. 1988) (per curiam) (the claimant's treating physician determined that the claimant suffered from fibromyalgia following examination of certain focal points and systematic elimination of other diseases).

Here, Claimant has not presented the A.L.J. with any evidence to suggest her fibromyalgia limits her ability to perform sedentary work. *See* 20 CFR § 404.1512 (a) (it is up to the claimant to furnish medical and other evidence which the "Social Security Administration can use to reach conclusions about [a claimant's] medical impairment(s) and its effect on [her] ability to work on a sustained basis."). In fact, the only evidence of fibromyalgia in the record is found in Claimant's self-reported medical history during visits to Drs. Grant and Lynch. (Doc. 14-14 at 347, 351); (Doc. 14-10 at 223). There is no further diagnosis, treatment, or discussion of fibromyalgia in the record. To hold that the A.L.J. erred by taking account of this scantiness of evidence would require an A.L.J. to consider any erroneous allegations of self-reported ailments.

Moreover, the A.L.J. predominately portrayed Claimant's living activities accurately. He stated: that she is able to maintain personal hygiene; care for her two young children; care for her

13

sick mother three to four hours a day for six days a week; that she is able to stand and walk without her compression stockings long enough to go outside with her children; that she is too busy to attend physical therapy; and that she is able to pay bills. (Doc. 14-2 at 18). The A.L.J. found Claimant's statement that she cannot sit for extended periods of time due to leg numbness inconsistent with the reports she has provided her medical providers since September 2007. *Id*. The Magistrate Judge suggests that the A.L.J. should have considered Claimant's statement that she just sits with her mother. (Doc. 21 at 7). However, this would simply corroborate the A.L.J.'s adverse credibility finding by contradicting Claimant's claim that she cannot sit for extended periods of time. Although Claimant alleges that she has difficulty washing her hair at times, the Court does not find this to be the type of mischaracterization requiring remand, especially since the A.L.J. considered a number of other factors. *See Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001) (the Court may not disturb an adverse credibility determination but for a "compelling reason") .

      The A.L.J. also considered Claimant's medical opinion evidence, treatment history, and psychiatric condition. (Doc. 14-2 at 18). He found the opinions of Drs. Grant and Lynch to be "generally consistent" with the RFC determination, and the opinion of Dr. Al-Turk to be fully consistent. *Id*. The A.L.J. found that none of the opinions contained any evidence limiting Claimant's ability to perform sedentary work or any discussion of fibromyalgia. *Id*. Moreover, the A.L.J. discussed prescribed treatment. He considered the compression stocking which Dr. Grant gave to Claimant to help her stand and walk for long periods of time and the recommendations for physical therapy, which were declined. *Id*. Lastly, the A.L.J. cited the

14

opinion of Thomas Evans, Ph.D., who found the claimant did not have an Axis I or II psychiatric condition. (Doc. 14-2 at 18-19).

In conclusion, although the A.L.J. did give some weight to the lack of objective medical evidence, this was justified considering the sheer lack of evidence put forth by Claimant related to fibromyalgia. Furthermore, the A.L.J. did not exclusively rely on objective evidence, but also considered Claimant's daily living activities, treatment history, medical opinions, and psychiatric condition to assess credibility. As such, the A.L.J.'s RFC analysis was proper and supported by substantial evidence.

*3. The A.L.J. met his burden to prove jobs exist in the national economy*

The second issue raised by Claimant in her brief to the Magistrate Judge concerns the A.L.J.'s use of the medical-vocational guidelines ("grids") to show there are jobs that Claimant can perform and that exist in significant numbers in the national economy. The Magistrate Judge did not address this claim. The Court finds that because the Claimant did not sufficiently allege nonexertional impairments, the A.L.J.'s reliance on the grids was proper.

"Once the claimant establishes that [she] cannot perform [her] past relevant work, the burden shifts to the Secretary to establish that the claimant retains the residual functional capacity to perform 'substantial gainful work which exists in the national economy.'" *Cole v. Sec'y of Health & Human Servs.*, 820 F.2d 768, 771 (6th Cir. 1987) (quoting *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986)). To satisfy this burden, the Commissioner may generally rely on the grids. *Brown v. Bowen*, 836 F.2d 549 (6th Cir. 1987) (per curiam).

Introduced in 1978, the grids were created to unify and optimize the process of acquiring vocational expert testimony. *Heckler v. Campbell*, 461 U.S. 458, 470 (1983). The grids relieve

the A.L.J. of the need to hear testimony of the vocational expert regarding the types and numbers of jobs available in the national economy. *Id.* at 461. "[T]he grids . . . tell us nothing, however, about the degree of disability and what the residual functional capacity of an individual might be." *Hurt v. Sec'y of Health & Human Servs.*, 816 F.2d 1141, 1142-1143 (6th Cir. 1987). Instead, the grids simply state whether or not work exists in the national economy for a particular claimant. *Id.*

The grids use a "matrix" of four factors. *Heckler*, 461 U.S. at 461-62. Those factors are ability, age, education, and work experience. *Id.* If a "claimant's qualifications correspond to the job requirements identified by a rule, the guidelines direct a conclusion as to whether work exists that the claimant could perform. *Heckler*, 461 U.S. at 461-62. If work is found to exist, the claimant is not considered disabled. *Id.* at 462.

It is well established that the grids do not apply if the claimant has a significant nonexertional impairment. *Cole*, 820 F.2d at 772 (but the mere allegation of a nonexertional impairment is not sufficient to preclude application of the grids); *Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981). Examples of nonexertional impairments are described by 20 C.F.R. § 404.1569(c)(1):

> When the limitations and restrictions imposed by your impairment(s) and related symptoms, such as pain, affect only your ability to meet the demands of jobs other than the strength demands, we consider that you have only nonexertional limitations or restrictions. Some examples of nonexertional limitations or restrictions include the following:
>> (i) You have difficulty functioning because you are nervous, anxious, or depressed;
>> (ii) You have difficulty maintaining attention or concentrating;
>> (iii) You have difficulty understanding or remembering detailed instructions;
>> (iv) You have difficulty in seeing or hearing;

16

> (v) You have difficulty tolerating some physical feature(s) of certain work settings, e.g., you cannot tolerate dust or fumes; or
> (vi) You have difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching.

*See also Cole*, 820 F.2d at 772 (nonexertional impairments are traditionally mental, sensory, or environmental limitations). Stated another way, application of the grids is generally limited to cases in which the claimant's alleged impairments relate only to his or her strength. *Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990).

In her brief to the Magistrate Judge, Claimant alleges she suffers from nonexertional limitations relating to numbness in her hand consistent with her carpal tunnel syndrome, pain and limited ability to reach related to bilateral shoulder outlet impingement and bilateral upper extremity neuropathy v. radiculopathy, and chronic pain as result of fibromyalgia. (Doc. 17 at 9-10). Based on the examples of nonexertional limitations outlined above and on Claimant's allegations, the only conceivable nonexertional limitation has to be related to "difficulty performing the manipulative or postural functions of some work." 20 C.F.R. § 404.1569(c)(1)(vi). However, Claimant does not point to any evidence of record nor to judicial authority to explain how her alleged nonexertional impairments limit her ability to perform the full range of sedentary work.

The A.L.J. considered Claimant's allegations regarding her ability to sit, stand, and lift up to ten pounds, finding her allegations to be inconsistent with the evidence. As more fully discussed above, the A.L.J. supported his findings with substantial evidence. Because Claimant has merely alleged the existence of nonexertional impairments, without any specific descriptions, support, or explanation as to how they limit her ability to perform the full range of sedentary

17

work, the Court finds the A.L.J.'s reliance on the grids sufficient to satisfy the fifth and final step of the sequential evaluation.

**IV. Conclusion**

For the aforementioned reasons, the Court declines to adopt the Report and Recommendation of the Magistrate Judge. (Doc. 21). Furthermore, the Court hereby affirms the determination of the Administrative Law Judge, as that determination was made using the proper standard of law, and is supported by substantial evidence. (Doc. 14-2).

IT IS SO ORDERED.

    S/ *David A. Katz*
    DAVID A. KATZ
    U. S. DISTRICT JUDGE